IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

TG, MS, BC, BM, & KR

       Plaintiffs,

v.                                                              No.

THE GEO GROUP, INC., CORIZON
INC., MARK ELLIOT WALDEN, M.D.,
WARDEN ERASMO BRAVO, WARDEN
TIMOTHY B. HATCH, SHERRY PHILLIPS
And KATHERINE ARMJO,

       Defendants.

## COMPLAINT FOR THE RECOVERY OF DAMAGES CAUSED BY THE DEPRIVATION OF CIVIL RIGHTS

Plaintiffs bring this complaint for damages caused by the violation of their civil and constitutional rights, for negligence and breach of contract against Defendants in their capacities as both private corporations, and as state actors in the performance of governmental duties:  Plaintiffs file this complaint under the Federal Civil Rights Act, and under the New Mexico Tort Claims Act and/or common law.  In support of this Complaint, Plaintiff alleges the following:

### JURISDICTION AND VENUE

1. Jurisdiction over the subject matter of this action is conferred by 28 U.S.C. § 1331 and 42 U.S.C. §§ 1983 and 1988.

2. This Court has subject matter jurisdiction.

3. This Court has jurisdiction over the parties.

4. Venue is proper in this Court.

## PARTIES

5.  At all times material to this complaint Plaintiffs were prisoners in the Northeast New Mexico Detention Facility, ("NENMDF"), in Clayton New Mexico.

6.  At the time of filing this complaint, all Plaintiffs are no longer in custody and are no longer prisoners.

7.  At all material times Defendant GEO Group Inc., ("GEO"), operated NENMDF and the Guadalupe County Correctional facility ("GCCF"), in Santa Rosa, New Mexico.

8.  Defendant GEO operated these facilities pursuant to a contract with an agency of the State of New Mexico.

9.  Defendant GEO is a foreign corporation registered to do business in New Mexico whose registered agent for service of process is Corporate Creations Network, Inc., 400 N. Pennsylvania Ave. #600, Roswell, New Mexico 88201.

10. During all material times Defendant Corizon , Inc., ("Corizon"), was responsible for providing medical care to inmates at GCCF and NENMDF pursuant to a contract with an agency of the State of New Mexico.

11. Defendant Corizon is a foreign corporation registered to do business in New Mexico whose registered agent for service of process is CT Corporation System, 123 East Marcy, Santa Fe, New Mexico, 87501.

12. At all material times Defendants GEO and Corizon acted through their owners, officers, directors, employees, agents or apparent agents, including, but not limited to, administrators, management, nurses, doctors, technicians and other staff and are

responsible for their acts or omissions pursuant to the doctrines of respondeat superior, agency or apparent agency.

13. At all material times Defendant Mark Elliot Walden was employed by Defendant Corizon to provide medical care at GEO operated facilities either in Clayton or Santa Rosa New Mexico.

14. Defendant Walden was the doctor in charge of providing medical services to Plaintiffs.

15. Defendant Erasmo Bravo was warden of GCCF at all material times.

16. Defendant Bravo was responsible for the customs and policies of GCCF and is sued both in his individual and official capacities.

17. Defendant Timothy Hatch was warden of NENMDF at all material times.

18. Defendant Hatch was responsible for the customs and policies of NENMDF and is sued both in his individual and official capacities.

19. Defendant Katherine Armijo was the Health Services Administrator of GCCF at all material times.

20. Defendant Armijo was responsible for the customs and policies related to the provision of medical care at GCCF and is sued in both her individual and official capacities.

21. Defendant Sherry Phillips was the Health Services Administrator at NENMDF at all material times.

22. Defendant Phillips was responsible for the customs and policies related to the provision of medical care at NENMDF and is sued in both her individual and official capacities.

23. At all material times all Defendants were acting under color of state law and within the course and scope of their employment and duties.

## FACTS COMMON TO ALL COUNTS

24. All Defendants are aware of the potential for prisoners to be subjected to sexual abuse.

25. All Defendants are aware of the damage that the sexual abuse of prisoners creates to the prisoners, the people who work within the prison system, and society as a whole.

26. The federal government has made great efforts to help prevent the sexual abuse of prisoners by introducing legislation designed to protect both inmates and society from the harmful effects of such activity.

27. The Defendants are aware of this legislation and as private actors working for profit within the prison system are tasked with the job of trying to prevent sexual abuse within their facilities.

28. Defendants Corizon and GEO have entered into contracts that obligate them to protect the constitutional rights of the prisoners they provide services to.

29.  These contracts require Defendants to attempt to identify and prevent the sexual abuse of inmates.

30. These contracts require Defendants GEO and Corizon to maintain adequate staffing levels and to provide adequate training, supervision and discipline of their employees to help prevent constitutional violations including those associated with sexual misconduct.

31. Defendants GEO and Corizon are required to work together on a day to day basis to provide constitutionally acceptable conditions of confinement and adequate medical care.

32. Defendant GEO is obligated to provide security and help prevent the abuse of inmates even if such abuse comes from a Corizon employee.

33. Defendant GEO is obligated to ensure inmates receive constitutionally adequate medical care even if employees of Defendant Corizon are providing medical services.

34. Defendants GEO and Corizon are obligated to train their staff to be alert for evidence of sexual misconduct even if the perpetrator is an employee.

35. Defendants GEO and Corizon are obligated to implement policies designed to protect prisoners who report sexual misconduct and to take such allegations seriously.

36. Defendants GEO and Corizon are obligated to call law enforcement such as the State Police, each time an inmate alleges he has been the victim of sexual abuse.

37. Defendants GEO and Corizon are aware of the position of power and authority vested in their employees and are therefore obligated to perform adequate staff background checks, period reviews and appropriate discipline to help prevent potential sexual predators from having access to prisoners.

38. Defendant Corizon hired Defendant Walden to work at the Guadalupe County Correctional Facility, (GCCF), in Santa Rosa.

39. GCCF is operated by Defendant GEO.

40. Defendant Walden kept and maintained a Facebook account.

41. Periodically, during his employment with Corizon, Defendant Walden would publish pictures of himself and others posing in sexually explicit ways.

42. Such pictures included semi naked men posing with plastic penises attached to their crotches.

43. While working as the GCCF facility doctor, Defendant Walden began to sexually abuse inmates.

44. During this time period staff became suspicious of Dr. Walden's behavior and inmates began to complain.

45. In September of 2011 all Defendants were placed on notice of Defendant Walden's sexual abuse when an inmate made a written complaint about his conduct.

46. Despite this knowledge Defendants allowed Walden to continue to have unfettered access to prisoners.

47. Despite this knowledge Defendants Corizon and GEO failed to adequately investigate, supervise and discipline Defendant Walden.

48. Instead, Defendant Corizon transferred Defendant Walden to another GEO facility in Clayton New Mexico.

49. Defendant GEO was aware of the sexual abuse allegations but allowed Defendant Walden to be transferred to another of their facilities.

50. By failing to discipline Defendant Walden, and allowing him to be transferred to a new population of inmates who were unaware of his reputation for sexual abuse, Defendants Corizon and GEO effectively ratified and ultimately encouraged his misconduct.

51. Shortly after Defendant Walden arrived at the Clayton facility, staff again became suspicious of his behavior.

52. Nurses noted unusually high numbers of digital rectal examinations being conducted, many on prisoners who were too young to require such a procedure.

53. Staff noticed Defendant Walden would conduct genital examinations without the presence of a third party chaperone.

54. Inmates began to complain to their psychiatric counselors of the sexual misconduct.

55. Despite all the signs of sexual abuse taking place, Defendants Corizon and GEO allowed Defendant Walden to see prisoners alone to conduct abusive genital and anal examinations.

56. This abuse only came to an end in July 2012 after an investigation by the Clayton Police.


**Facts Related to Plaintiff TG**

57. At the time of filing this complaint, Plaintiff TG is not a prisoner as defined by the Prison Litigation Reform Act.

58. Plaintiff has finished his sentence and is not on probation or parole.

59. In 2010 Plaintiff was serving a sentence in GCCF, Santa Rosa New Mexico.

60. Plaintiff had a pre existing mental health disorder.

61. Plaintiff had been diagnosed as suffering from PTSD and depression.

62. Plaintiff had other medical problems including those associated with a broken wrist.

63. As a result of Plaintiff's medical problems he required continual medical care.

64. One of the doctors who saw Plaintiff while in GCCF was Defendant Walden.

65. During one visit Plaintiff became concerned with the treatment he was getting from Defendant Walden.

66. Defendant Walden examined Plaintiff's genitals looking for warts.

67. Plaintiff complained about the examination and told Defendant Walden he did not have genital warts.

68. On another occasion Defendant Walden performed a second, unnecessary examination of Plaintiff's genitals.

69. Defendant Walden pulled back Plaintiff's foreskin and manipulated Plaintiff's testicles.

70. When Plaintiff objected to this behavior a second time Defendant Walden threatened Plaintiff with a "write up" and possible segregation time for failing to cooperate.

71. At some point in his incarceration Plaintiff began to grow a lump on his neck.

72. As the lump grew larger Plaintiff became concerned he was suffering from cancer.

73. Plaintiff was forced to seek medical help due to the lump on his neck.

74. Plaintiff was transferred to the state run facility in Los Lunas.

75. While in Central New Mexico Correctional Facility in Los Lunas, (CNMCF), Plaintiff received medical treatment for his numerous medical conditions including the lump on his neck.

76. While in CNMCF medical staff did not examine Plaintiff's genitals in an inappropriate way.

77. Plaintiff received surgery to remove the lump on his neck.

78. In 2012, Plaintiff was transferred to the privately run prison in Clayton.

79. Plaintiff needed follow up treatment for his surgery.

80. By this point in time Defendant Walden had been transferred from the private prison in Santa Rosa, to another facility run by Defendant GEO in Clayton.

81. Defendant Walden remembered Plaintiff from his time in Santa Rosa.

82. Despite Plaintiff's need for follow up care for his neck, Defendant Walden insisted on performing an unnecessary prostate examination on Plaintiff.

83. Plaintiff was scared and sweating with anxiety during this examination.

84. Defendant Walden penetrated Plaintiff's anus with his finger.

85. Defendant Walden repeatedly withdrew, then penetrated Plaintiff's anus in a rhythmical fashion.

86. After penetrating Plaintiff's anus Defendant Walden removed his gloves and began to manipulate Plaintiff's penis.

87. Defendant Walden continued to manipulate Plaintiff until seminal fluid was induced.

88. After the examination Plaintiff felt humiliated and violated.

89. Approximately 15 days later Plaintiff needed additional follow up care for his serious medical conditions.

90. Plaintiff was extremely anxious and did not want to see Defendant Walden again.

91. Plaintiff's serious medical needs required him to return to Defendant Walden.

92. Again Defendant Walden performed an unnecessary digital anal exam.

93. Again Defendant Walden repeatedly withdrew, then penetrated Plaintiff's anus in a rhythmical fashion.

94. On this occasion Plaintiff refused to allow Walden to ejaculate him.

95. Again Defendant Walden tried to intimidate Plaintiff by threatening to write him up.

96. Plaintiff told mental health providers what occurred to him.

97. Medical records indicate TG had prostate examinations on June 30th and July 13th 2012.

98. For the remainder of his time in prison Plaintiff suffered extreme anxiety, depression and humiliation as a result of Defendant Walden's behavior.

**Facts Related to Plaintiff MS**

99. At the time of filing this complaint, Plaintiff MS is not a prisoner as defined by the Prison Litigation Reform Act.

100.     Prior to his release, MS was incarcerated at NENMDF in Clayton New Mexico.

101.     MS is a diabetic, has Hepatitis C and asthma, and was enrolled in the Chronic Disease Clinic, which required frequent follow-up care.

102.     MS's diabetes, asthma, and Hepatitis C resulted in frequent medical visits with Dr. Walden.

103.     During these visits, Dr. Walden administered many prostate exams and erroneously informed Mr. Sanchez that he had prostate cancer, which was why he was administering the exams.

104.     On March 9, 2012, MS reported to a chronic disease clinic follow-up with Dr. Walden who digitally penetrated his anus.

105.     Dr. Walden massaged MS's genitals causing MS to ejaculate.

106.     After ejaculation, Dr. Walden openly smelled MS's ejaculate.

107.     Dr. Walden submitted a consultation request regarding MS's liver in which he noted that MS had a small nodule on his prostate.

108.      No prostate nodule is mentioned in Dr. Walden's notes from prior prostate examinations.

109.     Dr. Walden continued administering medically unnecessary prostate exams to MS.

110.     On April 27, 2012, MS reported for another Chronic Disease Clinic follow-up where he was scheduled to see Dr. Walden. During this appointment, Dr. Walden again digitally penetrated MS's anus.

111.     After penetration, Dr. Walden again massaged MS's genitals causing ejaculation.

112.     After ejaculation, Dr. Walden openly smelled MS's ejaculate.

113.     Dr. Walden performed these medically unnecessary anal examinations on at least 6 occasions, (3/9/12, 4/27/12, 5/11/12, 6/09/12, 6/22/12, 7/13/12).

114.     MS had a final appointment with Dr. Walden on July 13, 2012 during which Dr. Walden digitally penetrated his anus.

115.     Following this appointment, MS no longer saw Dr. Walden for treatment. Additionally, MS did not receive any further prostate exams from any other medical providers.

**Facts Related to Plaintiff BC**

116.     At the time of filing this complaint, Plaintiff BC is not a prisoner as defined by the Prison Litigation Reform Act.

117.     Prior to his release Plaintiff BC had been incarcerated at NENMDF in Clayton.

118.     During his incarceration at NENMDF, BC was enrolled in the Chronic Disease Clinic where he was treated for Hepatitis C, Asthma, and High Blood Pressure (HTN).

119.     During his Chronic Disease Clinic Follow up on March 9, 2012 Dr. Walden diagnosed BC with Genital Warts. Dr. Walden scheduled a follow appointment for treatment of the penile warts.

120.     On March 31, 2012, BC reported to a medical appointment with Dr. Walden where Dr. Walden froze warts on the dorsal side of BC's penis.

121.     BC reported to another appointment on April 27, 2012 for his genital warts treatments.

122.     On May 12, 2012 BC reported to medical for a follow-up appointment for treatment regarding his penile warts.

123.     During this appointment, Dr. Walden manipulated BC's genitals in a medically unnecessary way.

124.      During this process Dr. Walden while handling BC's genitals said, "Hi there, big guy!"

125.     BC was disgusted and humiliated by this inappropriate examination.

126.     After this examination BC was too scared to go to his medically necessary appointments.

127.     As a result of Dr. Walden's treatment BC was effectively denied adequate medical care for his serious medical conditions.

**Facts Related to Plaintiff BM**

128.     At the time of filing this complaint, Plaintiff BM is not a prisoner as defined by the Prison Litigation Reform Act.

129.     Prior to his release BM was incarcerated at NENMDF.

130.     During his incarceration BM received medical treatment from Dr. Walden.

131.     On April 7, 2012 BM requested medical care for flu symptoms, including congestion, severe ear pain, sore throat, and a cough. Dr. Walden examined him.

132.     During Dr. Walden's examination he instructed BM to remove his shirt to examine his chest, and abdomen.

133.     Dr. Walden then instructed BM to remove his pants and boxers.

134.     Dr. Walden moved towards BM and grabbed his testicles with both hands and began manipulating them.

135.     Dr. Walden instructed BM to turn his head and cough while he held his testicles.

136.     Dr. Walden did not wear gloves during this examination.

137.     Dr. Walden then held his testicles with one hand and placed two fingers from his second hand behind BM's testicles.

138.     Dr. Walden again, while still holding his testicles, asked BM to turn his head and cough.

139.     BM felt extremely uncomfortable and backed himself away from Dr. Walden.

140.     BM refused all further treatment and scheduled appointments with Dr. Walden after this incident.

141.     BM is a victim of childhood sexual abuse and was traumatized by the actions of Dr. Walden.

**Facts Related to Ken Raven**

142.     At the time of filing this complaint, Plaintiff DS is not a prisoner as defined by the Prison Litigation Reform Act.

143.     Ken Raven (KR) was released from custody in April of 2013.

144.     Prior to his release, KR was incarcerated at the Northeast New Mexico Detention Facility.

145.     KR was enrolled in a Chronic Disease Clinic during his incarceration which caused him to be seen by medical frequently, many times by Dr. Walden.

146.     KR saw Dr. Walden on February 25, March 11, March 23, and June 2, 2012.

147.     KR had his prostate removed in 2008.

148.     During his visit on June 2, 2012, KR reported he had been unable to get an erection and asked Dr. Walden if there was any medical treatment he could provide.

149.     Dr. Walden instructed KR to remove his pants and knelt down in front of KR. Dr. Walden cupped KR's testicles in one hand and began manipulating KR's penis without gloves.

150.     Dr. Walden continued to massage KR's penis for approximately 2 minutes.

151.     Dr. Walden held his mouth close enough to KR's penis that KR could feel Dr. Walden's breath on his penis.

152.     KR began to feel uncomfortable and feared Dr. Walden was going to administer oral sex.

153.     KR left this appointment feeling vulnerable, ashamed, and angry.

154.    KR has a history of childhood abuse and was traumatized by the Dr. Walden's conduct.

## COUNT I: VIOLATION OF CONSTITUTIONAL RIGHTS BY DEFENDANT WALDEN

155.    Plaintiff restates each of the preceding allegations as it fully stated herein.

156.    Plaintiffs have an Eighth Amendment right to be free from cruel and unusual punishment.

157.    Plaintiffs also have a Fourteenth Amendment right to bodily integrity protected by the due process clause.

158.    Plaintiffs also have the right to be free from abuse of governmental authority for the sexual gratification of governmental actors, protected by the Equal Protection Clause.

159.    Defendant Walden's actions described in detail above amounted to sexual harassment and abuse of all Plaintiffs.

160.    Defendant Walden's actions deprived Plaintiffs of their bodily integrity and amounted to sexual assaults.

161.    Defendant Walden's actions were made with deliberate indifference to Plaintiff's constitutional rights.

162.    Defendant Walden's actions are conscious shocking.

163.    Defendant Walden used his authority as a high ranking governmental actor in a prison setting to gain compliance from his victims.

164.    Defendant Walden used threats of prison discipline to gain compliance from his victims.

165.     Defendant Walden used his position of authority to gain compliance from his victims to undertake unnecessary and abusive examinations for his own sexual gratification.

166.     Defendant Walden was the Doctor in charge of providing medical care to Plaintiffs.

167.     In his role as the doctor of the facility, Defendant Walden was responsible for setting the customs and policies associated with the day to day provision of medical care.

168.     Defendant Walden created a custom and policy of performing genital examinations without gloves.

169.     Defendant Walden created a custom and policy of performing anal examinations without third party chaperones.

170.     This custom and policy set by Dr. Walden was a moving force behind Plaintiffs' constitutional violations.

171.     Without these customs and policies in effect, Plaintiffs' constitutional rights would not have been violated.

172.     These actions were willful, wanton and obdurate.

173.     These actions caused Plaintiffs severe harm including emotional distress, pain, suffering, humiliation and mental trauma.

**COUNT II: VIOLATION OF CONSTITUTIONALRIGHTS BY WARDEN HATCH, WARDEN BRAVO, ADMINISTRATOR ARMIJO AND ADMINISTRATOR PHILLIPS**

174.     Plaintiff restates each of the preceding allegations as it fully stated herein.

175.     Warden Bravo and Administrator Armijo were placed on notice of the unconstitutional behavior of Dr. Walden when he was working at the GEO facility in Santa Rosa.

176.     Warden Bravo and Administrator Armijo were high ranking officials charged with enforcing state wide governmental policies within the private prison they were running.

177.     State wide policies require all allegations of sexual assault to be treated seriously and to remove potential perpetrators from their potential victims.

178.     Warden Bravo and Administrator Armijo were charged with the responsibility of training their employees to watch for signs of sexual abuse of inmates.

179.     Warden Bravo and Administrator Armijo had the responsibility to create an atmosphere where sexual misconduct by employees would not be tolerated under any circumstances.

180.     Despite knowing of the allegations of sexual abuse by Dr. Walden on prisoners in their facility, Warden Bravo and Administrator Armijo failed to take action to prevent Dr. Walden from violating other prisoners' constitutional rights.

181.     Instead Warden Bravo and Administrator Armijo allowed Dr. Walden to be transferred to the GEO facility in Clayton.

182.     This transfer was a moving force behind the violation of Plaintiffs' constitutional rights.

183.     This transfer amounted to a ratification of Dr. Walden's conduct and gave him access to a fresh set of victims.

184.    This transfer is evidence of a policy of failing to protect inmates from sexual abuse of staff members.

185.    Warden Hatch and Administrator Phillips, (Clayton facility), knew or should have known of the allegations against Dr. Walden.

186.    Administrator Phillips had a duty to ensure doctors who had a history of allegations of sexual abuse were not left alone with patients to conduct genital examinations.

187.    Warden Bravo had a duty to prevent individuals in positions of authority with a history of sexual abuse allegations having unsupervised access to prisoners.

188.    Given Dr. Walden's history of sexual misconduct allegations while performing medical procedures, Warden Bravo and Administrator Phillips had an affirmative duty to prevent Dr. Walden from performing genital or anal examinations of patients without a third person in the room.

189.    Defendants Hatch and Phillips actions allowing unsupervised anal and genital examinations to take place amounted to an affirmative act of deliberate indifference which resulted in Plaintiffs' constitutional rights being violated.

190.    Defendants Hatch and Philips conduct also amounted to the creation of a custom or policy of allowing the sexual misconduct of inmates by staff.

191.    Defendants Bravo and Administrator Armijo, (Santa Rosa facility), actions in allowing Dr. Walden to be transferred to a different facility amounted to an affirmative act of deliberate indifference which resulted in Plaintiff's constitutional rights being violated.

192.     These actions caused Plaintiffs severe harm including emotional distress, pain, suffering, humiliation and mental trauma.

### COUNT III: NEGLIGENCE GEO & CORIZON

193.     Plaintiff restates each of the preceding allegations as it fully stated herein.

194.     Defendants GEO and Corizon, through their employees and agents, owed Plaintiffs a duty of care in the hiring, training, supervision and staffing levels of their employees.

195.     Defendants GEO and Corizon, through their employees and agents, failed to:

   a.  Enforce state standards on the prevention and deterrence of predatory sexual misconduct by staff embers working within the prison.

   b.  Train or supervise staff members to prevent sexual misconduct by staff members, including doctors.

   c.  Adequately staff their facilities to help prevent the sexual misconduct described above, including providing enough staff to ensure a third person is present during anal and genital examinations.

   d.  Adequately supervise Dr. Walden following allegations of sexual misconduct.

   e.  Prevent Dr. Walden from being transferred to a different facility where he had access to a new set of victims.

196.     Defendant Corizon knew, or should have known, Defendant Walden was also employed as a physician in private practice.

197.     Defendant Corizon knew, or should have known, Defendant Walden did not have the time or capability to administer appropriate care to the prisoners and continue to run his private practice at the same time.

198.     Given Defendant Walden was employed, and part owner, of a demanding private practice, Defendant Corizon should have supervised him closely to ensure he was giving appropriate care and not using his position to victimize a vulnerable population.

199.     Defendants GEO and Corizon are responsible for the actions, or inactions, of their employees pursuant to the doctrines of agency and respondeat superior.

200.     As a result of the intentional, reckless or negligent acts and omissions of Defendants, Plaintiffs suffered severe harm including emotional distress, pain, suffering, humiliation and mental trauma.

201.     Because the defendants actions were willful wanton or in reckless disregard for Plaintiffs' safety, Defendants are subject to punitive damages.

## COUNT IV: NEGLIGENCE, NEGLIGENCE PER SE, ASSAULT AND BATERY BY DEFENDANT WALDEN

202.     Plaintiff restates each of the preceding allegations as it fully stated herein.

203.     Defendant Walden owed Plaintiffs a duty to use ordinary care in providing medical services.

204.     Under the guise of providing appropriate medical care and by using his position as a facility doctor to sexually abuse Plaintiffs, Defendant Walden acted willfully, recklessly, wantonly, negligently and/or was negligent per se, breaching the duty he owed to Plaintiffs in multiple ways, including but not limited to the following:

a.  Intentionally choosing to inflict emotional distress on Plaintiffs through his extreme and outrageous conduct.

b.  Choosing to engage in criminal sexual penetration and criminal sexual contact with an inmate while in a position of authority in violation of New Mexico criminal statutes.

c.  Unlawfully touching or applying force to another person in violation of New Mexico criminal statutes, (aggravated battery, battery and/or assault).

d.  Choosing as a physician to engage in unprofessional or dishonorable conduct in violation of NMSA § 61-6-15(D).

205.    Plaintiffs are in the class of persons sought to be protected by the aforementioned statutes, and the injuries are the type intended to be prevented by the enactment of these statutes.

206.    Defendants GEO and Corizon are liable for the acts and omissions of Defendant Walden pursuant to the doctrines of agency and respondeat superior.

207.    As a result of the intentional, reckless or negligent acts and omissions of Defendants, Plaintiffs suffered severe harm including emotional distress, pain, suffering, humiliation and mental trauma.

## COUNT V: CONTRACTUAL LIABILITY

208.    Plaintiff restates each of the preceding allegations as it fully stated herein.

209.    Defendants GEO and Corizon entered into contracts with governmental entities.

210.     New Mexico state law requires such contracts to include responsibility for the corporations to accept all liability for damages arising out of the operation of the prisons.

211.     Upon information and belief, the contracts signed by GEO and Corizon require them to pay for all liability incurred from the actions or inactions of their staff resulting in the constitutional violations described above.

212.     Defendants GEO and Corizon are responsible to pay Plaintiffs' damages for the conduct described above.

213.     Additionally, the contracts signed by GEO and Corizon required them to perform their duties in a competent and reasonable manner in compliance with state standards.

214.     GEO and Corizon were contractually required to employ a minimum number of staff to help prevent constitutional violations such as described above.

215.     Upon information and belief, GEO and Corizon did not employ sufficient staff to protect Plaintiffs from the abuse described above.

216.     Plaintiffs are third party beneficiaries to these contracts.

217.     Defendants GEO and Corizon breached their contractual duties thereby causing Plaintiffs' damages including physical pain, suffering, humiliation, mental anguish, invasion of bodily integrity, a denial of competent medical care and severe emotional distress.


## **JURY DEMAND**

Plaintiff hereby demands a trial by jury on all counts.

WHEREFORE, Plaintiff requests judgment as follows:

1. Compensatory damages in an as yet undetermined amount, jointly and severally against all Defendants, including damages for attorney's fees and emotional harm.

2. Punitive damages in an as yet undetermined amount severally against the individually named Defendants.

3. Reasonable costs and attorney's fees incurred in bringing this action.

4. Such other and further relief as the Court deems just and proper.


Respectfully submitted,

COYTE LAW P.C.


 /s/ Matthew E. Coyte
Matthew E. Coyte
Attorney for Plaintiff
1000 Second Street NW
Albuquerque, NM 87102
(505) 244-3030

-AND-

 /s/ Jack B. Jacks
Jack B. Jacks
Attorney for Plaintiff
1000 Second Street NW
Albuquerque, NM 87102
(505) 463-1021

23